UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LARRY HALBERT,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>KEVIN KEMPF, HENRY ATENCIO, KEITH YORDY, AMANDA BENTON, RONA SIEGERT, MS. PARTRIDGE-GREMMO, CORIZON, INC., and JANE and JOHN DOES I-X,<br><br>　　　　Defendants. | Case No. 1:18-cv-00470-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is Defendant's Motion for Summary Judgment which is now ripe for adjudication. Dkt. 26. Plaintiff Larry Halbert has not opposed the motion. For the reasons explained below, the Court finds that there is no genuine issue of material fact and that Defendants are entitled to judgment as a matter of law. Therefore, Defendants' Motion for Summary Judgment will be granted.

## BACKGROUND

Plaintiff is in the custody of the Idaho Department of Corrections ("IDOC").

**MEMORANDUM DECISION AND ORDER - 1**

In a previous Order, this Court permitted Plaintiff to proceed on his Eighth Amendment claims against Defendants Lindsey Partridge-Gremmo ("Partridge-Gremmo") and Corizon, LLC. ("Corizon"), the private entity providing medical treatment to Idaho state prisoners under contract with the IDOC. *See* Dkt. 7.

In December 2017, Plaintiff suffered multiple bone fractures, including fractures to his tibia, arising from a violent motor vehicle accident. Dkt. 26-2 at 2. Plaintiff underwent multiple surgeries to correct the fractures. *Id*. In January 2018, Plaintiff began receiving physical therapy treatments from licensed physical therapist Partridge-Gremmo. *Id*. at 3. Partridge-Gremmo saw plaintiff for appointments several times from March until June 2018. During a May 29 appointment, Plaintiff indicated to Partridge-Gremmo that it felt like a screw was "backing out" at the sight of the surgical repair of his tibia and that he felt he had a shin splint. *Id*. at 5. After Partridge-Gremmo conducted an objective examination and provided a soft tissue massage, Plaintiff left the appointment. At his next visit, Plaintiff reported increased pain and decreased function of his leg. Partridge-Gremmo completed an objective assessment only and recommended Plaintiff see his orthopedic surgeon. *Id*. at 6.

On June 11, 2018, Plaintiff was seen offsite at the St. Alphonsus Medical Group, where medical imaging detected hardware failure and showed a

**MEMORANDUM DECISION AND ORDER - 2**

"nonunion" of Plaintiff's fracture. *Id*. On July 17, Plaintiff underwent subsequent surgery. *Id*. at 8. Following surgery, the offsite provider suggested bone stimulator treatments for his leg. *Id*.

Plaintiff also received prescription strength pain medication for pain management in February and March 2018. *Id*. at 2. At a surgical follow-up, a provider at the St. Alphonsus Medical Group recommended that Plaintiff wean off the medication. *Id*. Plaintiff then saw Nurse Practitioner Rogers ("Rogers"), an employee at the IDOC infirmary, who suggested Plaintiff voluntarily reduce the pain medication in order to increase the effectiveness of the drug. Rogers then twice renewed Plaintiff's prescriptions. *Id*. at 2-3.

## STANDARDS OF LAW

### A.   Summary Judgment

Summary Judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment rule "is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is not "a disfavored procedural shortcut," but is instead the "principal tool[] by which factually insufficient claims or defenses [can] be isolated and

prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327.

In considering a motion for summary judgment, the Court must consider the facts in the light most favorable to the non-moving party, unless the non-moving party's version of the facts is "blatantly contradicted by the record." *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The Court is "not required to comb through the record to find some reason to deny a motion for summary judgment. *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (internal quotation marks omitted). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

The party moving for summary judgment has the initial burden to show that

each material fact cannot be disputed. To show that the material facts are not in dispute, a party may cite to particular parts of materials in the record or show that the adverse party is unable to produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A) & (B). The Court must consider "the cited materials," but it may also consider "other materials in the record." Fed. R. Civ. P. 56(c)(3).

If the moving party meets this initial responsibility, then the burden shifts to the non-moving party to establish that a genuine dispute of material fact does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which the jury could reasonable find for the [non-moving party]." *Anderson*, 477 U.S. at 252. "[I]f a defendant moving for summary judgment has produced enough evidence to require the plaintiff to go beyond his or her pleadings, the plaintiff must counter by producing evidence of his or her own." *Butler v. San Diego Dist. Attorney's Office*, 370 F.3d 956, 963 (9th Cir. 2004). If the plaintiff fails to produce evidence, or if the evidence produced is insufficient to establish a genuine and material factual dispute, the Court "is not required (or even allowed) to assume the truth of the challenged allegations in the complaint." *Id*.

If a party "fails to properly support an assertion of fact or fails to properly

**MEMORANDUM DECISION AND ORDER - 5**

address another party's assertion of fact," the Court may consider that fact to be undisputed. Fed. R. Civ. P. 56(e)(3). The Court must grant summary judgment for the moving party "if the motion and supporting materials—including the facts considered undisputed—show that the movement is entitled to id." Fed. R. Civ. P. 56(e)(3).

    **B.**    **Eighth Amendment**

Plaintiff brings his claims under 42 U.S.C. § 1983, the civil rights statute. To succeed on a claim under § 1983, a plaintiff must establish a violation of rights protected by the Constitution or created by federal statute proximately caused by the conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

The Eighth Amendment protects prisoners against cruel and unusual punishment. To state a claim under the Eighth Amendment, a prisoner must show that he is "incarcerated under conditions posing a substantial risk of serious harm," or that he has been deprived of "the minimal civilized measure of life's necessities" as a result of Defendants' actions. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). An Eighth Amendment claim requires a plaintiff to satisfy "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective

standard—deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012). The Eighth Amendment includes the right to adequate medical care in prison, and prison officials or prison medical providers can be held liable if their "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Regarding the objective standard for prisoners' medical care claims, the Supreme Court of the United States has explained that, "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

The Ninth Circuit has defined a "serious medical need" in the following ways:

> failure to treat a prisoner's condition [that] could result in further significant injury or the unnecessary and wanton infliction of pain [;] … [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects and individual's daily activities; or the existence of chronic and substantial pain ….

*McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992) (internal citations omitted), *overruled on other grounds*, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).

As to the subjective standard, a prison official or prison medical provider

**MEMORANDUM DECISION AND ORDER - 7**

acts with "deliberate indifference … only if the [prison official] knows of and disregards an excessive risk to inmate health and safety." *Gibson v. Cty Of Washoe, Nev*., 290 F.3d 1175, 1187 (9th Cir. 2002) (citation and internal quotation marks omitted). "Under this standard, the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Farmer*, 511 U.S. at 837).

Mere indifference, medical malpractice, or negligence will not support a cause of action under the Eighth Amendment. *Broughton v. Cutter Labs*., 622 F.2d 458, 460 (9th Cir. 1980) (per curiam). A delay in treatment does not constitute a violation of the Eighth Amendment unless the delay causes further harm. *McGuckin*, 974 F.2d at 1060. Additionally, differences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnosis and treatment are not enough to establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). "[T]o prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstance,' and was chosen 'in conscious disregard of an excessive risk' to the prisoner's health." *Chung*, 391 F.3d at 1058 (alteration omitted) (quoting *Jackson v. McIntosh*, 90

F.3d 330, 332 (9th Cir. 1996)).

Furthermore, to bring a civil rights claim against a municipality, local governing body, or private entity performing a public function, a plaintiff must allege sufficient facts in the complaint meeting the test articulated in *Monell v. Dep't of Soc. Servs.*, 436 U.S, 658, 690-694 (1978): (1) the plaintiff was deprived of a constitutional right; (2) the entity had a policy or custom; (3) the policy or custom amounted to deliberate indifference to plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *See Mabe v. San Bernardino Cty, Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001). To establish liability, an unwritten policy must be "persistent and widespread" that in constitutes a "permanent and well settled" practice. *Monell*, 436 U.S. at 691, quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-68 (1970).

## ANALYSIS

### A.   Defendant Partridge-Gremmo

In his amended complaint, Plaintiff claims that Partridge-Gremmo failed to review his medical history or X-rays to determine the extent of his injuries and therefore acted in deliberate indifference to his medical needs by improperly manipulating and shattering the bone in his leg. *Amend. Compl.*, Dkt. 6 at 11.

**MEMORANDUM DECISION AND ORDER - 9**

However, the undisputed record belies Plaintiff's claim.

Prior to treating Plaintiff, Partridge-Gremmo familiarized herself with his medical records, which included his recent injuries and surgeries. Dkt. 26-3 at 3. Partridge-Gremmo also met with Plaintiff for six physical therapy sessions before the May 29 appointment, where she familiarized herself with his injury and physically examined him in similar assessments. *Id*.

Furthermore, Partridge-Gremmo properly assessed and provided appropriate treatment to Plaintiff's leg. At the May 29 appointment, Plaintiff indicated that it felt like a screw was "backing out" at the surgical repair site and that he felt a "shin splint." Dkt. 26-3 at 3. After completing an objective examination of Plaintiff's range of motion in a similar manner as previous assessments, Partridge-Gremmo administered a soft tissue massage to the area close to the surgical site. She then provided Plaintiff with ice. *Id*. This was appropriate treatment. *Id* at 3-4. Plaintiff walked out of the appointment without issue. *Id*. at 4. Partridge-Gremmo recommended that Plaintiff see his orthopedic surgeon and Plaintiff was subsequently scheduled for further assessment. *Id*. She did not put pressure on, twist, jerk, or painfully manipulate Plaintiff's leg as alleged in his Amended Complaint.

During the next appointment, Plaintiff reported increased pain and an

**MEMORANDUM DECISION AND ORDER - 10**

inability to walk or bear weight since the last appointment. Dkt. 26-3 at 4. Partridge-Gremmo took his concerns seriously and completed only an objective assessment in light of the reported pain. She again recommended he see his orthopedic surgeon. *Id.*

Partridge-Gremmo's treatment was also deemed medically appropriate by Dr. James T. Beckmann. *See* Dkt. 26-7. Soft tissue massages and leg manipulation, like the treatment performed by Partridge-Gremmo, are unlikely to cause hardware failure. Instead, the hardware failure was likely a direct result of the fracture nonunion and inability of the hardware to accommodate the forces of weight bearing. *Id.* at 2-3. Dr. Beckmann attests that nonunions are a known complication of Plaintiff's injury given the severity of the fracture, amount of soft tissue damage, and smoking history. *Id.* at 3. Plaintiff has asserted no facts outside his pleadings showing Partridge-Gremmo's treatment was inadequate or that she failed to review necessary medical records, or even that a genuine dispute exists. As such, this claim will be dismissed.

### B.     Defendant Corizon

Plaintiff also claims the entity Corizon had a policy of "deliberate indifference to following recommended and prescribed treatment of treating physicians or specialists concerning inmates" by refusing to provide Plaintiff's

**MEMORANDUM DECISION AND ORDER - 11**

pain medication or pain management that had been previously prescribed by an outside provider. *Amend. Compl.* at 7-9. Plaintiff further claims that Corizon would not provide necessary X-rays or medical records to Partridge-Gremmel, which contributed to the re-break of his leg. *Id*. at 10.

    The record does not establish that Corizon had a policy or custom of depriving its patients treatment; therefore, this claim will also be dismissed. Plaintiff claims Corizon's policy of refusing to provide pain medication for administrative and costs reasons does not meet the local standards of health and that he was deprived pain medication for three weeks. *Amend. Compl*. at 7-8. However, in response to Plaintiff's concern that his pain medication wore off in the early morning hours, Rogers merely suggested that Plaintiff voluntarily reduce the dosage during the day to increase the effectiveness at night. Dkt. 26-2 at 2. Moreover, Rogers renewed Plaintiff's pain medication prescription twice without changing the dosage. *Id*. at 3. Accordingly, there is no evidence that Rogers discontinued Plaintiff's pain medication or that his recommendation was based on Corizon's alleged policy.

    Furthermore, Plaintiff's claim that Corizon denied him recommended "bone stimulator" treatments that could have prevented his injuries is unsupported by fact. No bone stimulator treatments were recommended until after Plaintiff's

subsequent surgery to correct the hardware failure and after his appointments with Partridge-Gremmo. Dkt. 26-2 at 8. Nor is there evidence that Corizon failed to provide this treatment on a policy basis.

Plaintiff's claim that Corizon failed to provide pertinent medical records to Partridge-Gremmo is also unsupported by fact. *Amend. Compl.* at 10. As explained, Partridge-Gremmo assessed Plaintiff's relevant records and familiarized herself before her appointments with Plaintiff. Plaintiff provides no support that Corizon prohibited, or otherwise sabotaged Partridge-Gremmo's review of his case, or that Corizon had a policy of doing so. Accordingly, the Court will grant summary judgment in favor of Defendants.

## ORDER

**IT IS ORDERED that** Defendant's Motion for Summary Judgment (Dkt. 26) is **GRANTED**. This case is **DISMISSED** with prejudice.

DATED: April 2, 2021

B. Lynn Winmill
U.S. District Court Judge